SACKS BROS. LOAN CO., INC. JEROME S. SACKS *v.* CITY OF INDIANAPOLIS.

[No. 2-576A179. Filed May 12, 1977. Rehearing denied August 2, 1977. Transfer denied October 6, 1977.]

*Palmer K. Ward,* of Indianapolis, for appellants.

*David R. Frick,* Corporation Counsel, City of Indianapolis, *William L. Soards, Soards & Carroll,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Sacks Brothers Loan Company, Inc. (Sacks) appeals a permanent injunction prohibiting it from operating a pawn shop and a second-hand dealers business

without a license, claiming the injunction was based upon the improper denial of a license to Sacks.

We affirm.

## FACTS

The facts and evidence most favorable to the judgment are:

On January 13, 1975, Sacks made application for a pawn shop license and a second-hand goods license. Both applications were denied. Sacks then appealed these denials through administrative channels in accordance with municipal licensing ordinances,[1] first to the Controller and then to the License Review Board (Board). After hearings before both, the denials were upheld.

Also in accordance with ordinance requirements,[2] the chairman of the License Review Board, on September 11, 1975, wrote Sacks' counsel, explaining that the denial of Sacks' license was the result of illegal activities permitted by Sacks in his business—in violation of city ordinances.

After this determination on September 11, 1975, by the License Review Board, the City of Indianapolis (City) filed a complaint for a preliminary and permanent injunction the next day (September 12, 1975) to prohibit Sacks from doing business without a license.

This action was brought pursuant to Indiana Code section 18-1-1.5-5:

Sec. 5. Special Proceedings. A city shall have power to:

\* \* \*

(c) Initiate a civil action to restrain any person, corporation or governmental entity from violating an ordinance regulating or prohibiting any condition or use of property, or from engaging in an activity without a license if a license is required for such activity by ordinance.

Sacks took no action for judicial review of the license denials, but did file a motion to dismiss on October 24, 1975, in

---

1. Code of Indianapolis & Marion County, tit. 7 (1970) (as amended).
2. *Id.* § 7-112(5).

the Injunction action, alleging the injunctive action should be dismissed as the decision of the License Review Board contained no special findings and conclusions and was therefore contrary to law. The trial court overruled this motion.

No preliminary injunction was issued.

On November 21, 1975, a hearing was held and the trial court heard evidence that a license was required by city ordinance for pawnbrokers, Sacks had no license, and Sacks was continuing to operate. Sacks rested without presenting rebuttal evidence.

The trial court granted a permanent injunction enjoining Sacks from operation as a pawnbroker or second-hand dealer on November 24, 1975. This appeal followed.

## ISSUE

A single issue is presented:

> Was the judgment of the trial court granting a permanent injunction contrary to law because the decision of City denying the licenses was not sustained by specific findings of fact and conclusions of law?

PARTIES CONTENTIONS: Sacks claims that the trial court improperly considered the fact he had no license because the license denial procedure did not follow ordinance requirements and was therefore contrary to law.

City counters that Sacks may not collaterally attack the License Review Board's decision as Sacks never sought judicial review of that decision as provided by the Administrative Adjudication Act. With the propriety of the license denial not subject to review, City contends the court was bound to grant the injunction as the only evidence was that Sacks did not have a license and was therefore operating in violation of law.

## DECISION

*CONCLUSION*—The judgment of the trial court granting a permanent injunction was not contrary to law.

Sacks is in the unfortunate position of being forced to collaterally attack the decision of the License Review Board. Having failed to seek judicial review of the Board's decision, Sacks then sought to dismiss the Injunction action because of certain alleged infirmities in the Board's decision. However, administrative decisions denying licenses may not be collaterally attacked.

Our Supreme Court put it this way in *State ex rel. Board of Medical Registration and Examination* v. *Frasure* (1950), 229 Ind. 315, 319-320, 98 N.E.2d 365, 366-67:

> We have held that the *conduct of the board is not subject to collateral attack. State ex rel. Board, etc.* v. *Cole* (1939), 215 Ind. 562, 20 N.E.2d 972, was an action brought to permanently enjoin the defendant from engaging in the unlawful practice of medicine.
>
> * * *
>
> [W]e . . . said:
>
> "The charge that the state board by its rules and practices wrongfully denied the appellee a license to follow the chiropractic method of treating the sick can not avail him anything. *The allegations of his answer relating to that subject amount merely to a collateral attack upon the conduct of the board. If he is entitled to a license he should proceed under the statute, or otherwise,* to compel the board to issue him one. We can not here determine whether the board acted justly or unjustly." *State ex rel. Board, etc* v. *Cole* (1939), 215 Ind. 562, 566, 20 N.E.2d 972. (emphasis added)

This analysis is applicable. When Sacks was denied a license, he pursued the administrative remedies available to him by appealing to the Controller and to the License Review Board, but stopped short of taking judicial action to directly attack the license denial and compel issuance of a license if wrongfully withheld.[3]

---

3. Our decision does not require us to decide the scope of the remedies available for directly attacking a municipal license denial. We do observe,

There is no evidence that Sacks sought judicial review of the Board's decision during the interval of over two months between the Board's decision on September 11, 1975, and the issuance of the injunction on November 24, 1975. Thus, Sacks is precluded from subsequently collaterally attacking the Board's decision in the Injunction action. *State ex rel. Board of Medical Registration & Examination* v. *Frasure, supra.*

As the uncontradicted evidence before the trial court indicated that Sacks was operating a pawn shop and second-hand business without a license, the trial court properly permanently enjoined Sacks from operating such businesses without a license pursuant to Indiana Code section 18-1-1.5-5 (c).

*Affirmed.*

Sullivan, J., and Robertson, C.J. (by designation), concur.

NOTE.—Reported at 362 N.E.2d 498.

---

however, that the City of Indianapolis provides by ordinance for judicial review of its administrative proceedings by reference to the Indiana Administrative Adjudication Act:

The judgment of the board shall be final, except as indicated herein, and the judgment together with the reasons therefor shall be delivered in writing to the person taking the appeal, and a certified copy shall be delivered to the controller who shall keep all judgments on file in his office. All judgments shall become effective upon delivery to the controller. Appeals of the License Review Board's final judgment may be judicially appealed in the manner prescribed by the Administrative Adjudication and Court Review Act of the Indiana General Assembly. Code of Indianapolis & Marion County § 7-112(5) (1970) (as amended).

The City's power to so define the manner of direct judicial review is open to question. To the extent the above ordinance attempts to regulate judicial administration or procedure, it has no effect. *See* IND. CODE § 18-1-1.5-18. The power of the Circuit and Superior Courts of Marion County comes instead from the Indiana Code. *See* IND. CODE §§ 33-4-1-1 *et seq.*, 33-5-1-1 *et seq.*

Although the Indiana General Assembly enacted legislation giving cities the power to license and regulate businesses, IND. CODE § 18-1-1.5-13(a), plus the power to enjoin these regulated businesses from operating without a license, IND. CODE § 18-1-1.5-5(c), it neither made the Administrative Adjudication Act applicable nor provided for direct judicial review of these administrative licensing procedures. A party denied a license, however, is not precluded from obtaining direct judicial review of the final licensing action by the city: "In the absence of statutory provision for appeal or other direct review, we have held that the validity of an administrative action may be challenged by an equitable action of injunction or an action for a declaratory judgment." *Suttmiller* v. *City of Batesville* (1967), 248 Ind. 391, 393, 226 N.E.2d 893, 894.