CITY OF ST. ANN, Missouri, a Municipal Corporation, Plaintiff–Respondent,

v.

George D. CRUMP, Defendant–Appellant.

No. 41753.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 26, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Chester A. Love, Daniel P. Card, II, Thomas K. Edelmann, Love, Lacks, McMahon & Schwarz, Clayton, for defendant–appellant.

William R. Dorsey, Clayton, for plaintiff–respondent.

SNYDER, Judge.

Plaintiff–respondent City of St. Ann sought a permanent injunction against defendant–appellant George D. Crump to prohibit him from using certain premises in the City of St. Ann for the conduct of his practice of chiropractic in violation of the city's zoning ordinance. The trial court permanently enjoined appellant from using the premises as an office building for the conduct of the practice of chiropractic or in any other manner using the property in violation of the zoning ordinance. A timely notice of appeal was filed.

Appellant contends the trial court erred in its conclusion that a licensed chiropractor is not a "physician" within the definition of that term in § 1 of St. Ann Ordinance No. 158, and further, that the trial court erred in finding Ordinance No. 158 to be a valid zoning ordinance because the city had not complied with all the provisions of state law concerning notice of public hearings for ordinances. It will not be necessary to speak to the validity of the zoning ordinance because the trial court erroneously applied the law in holding that appellant was not a "physician" as defined in the ordinance and the judgment must be reversed and remanded for that reason. Rule 73.01.3. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Appellant and his now deceased wife were, at the time the suit was filed, the record landowners of Lot 19 in the St. Ann Hills subdivision located within the city. They purchased the real property in October of 1959, and soon after appellant began the practice of chiropractic on the premises. Appellant lived there off and on for a time in late 1959 and early 1960 and has used the premises for the practice of chiropractic continuously since December 1959, although he has not actually occupied the premises as a resident since 1960. Appellant's daughter, Susan G. Crump, also a practicing chiropractor, currently shares office space with him at the St. Ann Hills location.

Lot 19 of the St. Ann Hills subdivision is located within an area zoned as "A" Residential in Ordinance No. 158, which was adopted by the city in 1953. A pertinent part of that ordinance follows:

*"Section 3.*

*Use Regulations*

'A' Residence District

In the 'A' Resident District no building or land shall be used and no building shall be hereafter erected, converted or structurally altered unless otherwise provided in this ordinance, except for one or more of the following uses:

.    .    .    .    .

(4) The use of any dwelling or part thereof by the owner and occupant of such dwelling for the practice of his or her profession as a physician, surgeon, or dentist, . . . ."

Section 1 of the ordinance contains the following definition: *"PHYSICIAN*: Any

regularly State licensed or State authorized practitioner of the art of healing the physical ailments of human beings."

After hearing the evidence the trial court entered judgment enjoining and restraining appellant, his agents and employees, or any person claiming under him, from using the Lot 19 premises as an office for the conduct of the practice of chiropractic or in any other manner using the lot in violation of the St. Ann zoning ordinance. The trial court in its findings of fact and conclusions of law, among other things, ruled that a licensed chiropractor is not a "physician" within the meaning of the ordinance and is not authorized to treat the physical ailments of human beings.

The determinative issue is whether the term "physician," as defined in the ordinance, includes chiropractors. This court holds that it does.

In determining the meaning of an ordinance or statute pertaining to zoning or other subjects, the courts seek to ascertain the intention of the lawmakers. Words are given their ordinary meaning by considering the entire act and its purposes. *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266 (Mo. banc 1964); *Hasekamp v. Superior Equipment Co.*, 490 S.W.2d 385 (Mo.App.1973).

A "physician," according to the ordinance, is, first, "any regularly State licensed or State authorized practitioner . . . ." Chiropractors are licensed to practice under the provisions of Chapter 331, RSMo 1978. Therefore, appellant is a licensed practitioner and meets the first portion of the ordinance's definition of "physician."

The second requirement of the ordinance is that the person included in the definition of the term "physician" be a "practitioner of the art of healing the physical ailments of human beings." Section 333.010, RSMo 1978 provides in pertinent part:

> "The **'practice of chiropractic'** is defined to be the science and art of examining and adjusting by hand the movable articulations of the human spinal column, for the correction of the cause of abnormalities and deformities of the body."

The question then is whether the practice of chiropractic as defined in the statute is in any way the "art of healing the physical ailments of human beings." The words are not the same but the meaning obviously is. The practice of chiropractic is a "science and art." What else could "correction of the cause" mean except healing? "[A]bnormalities and deformities of the body" are "physical ailments."

To "heal" means: "1 a: to make sound or whole: restore to health b: to cure of disease or affliction . . . 2 a: to cause (an undesirable condition) to be overcome or eliminated: MEND . . . ." A synonym for "heal" is "cure" which means, among other things: "2 a: to treat so as to remove, eliminate, or rectify . . . b: to free or relieve (a person) from an objectionable or harmful condition or inclination . . . ." Webster's Third New International Dictionary, Unabridged.

The statute refers to the "art of examining and adjusting . . . the human spinal column, for the correction of the cause of abnormalities and deformities . . . ." To correct the cause of abnormalities or deformities is to make sound or to eliminate an undesirable condition, i. e., to heal or to cure.

"Ailment" is defined as "a bodily sickness, disorder or chronic disease . . . ." Webster's Third New International Dictionary, Unabridged. An abnormality or deformity is a bodily disorder.

Even though the words used to define the practice of chiropractic in Chapter 331 of the statutes and those used in the city ordinance definition of "physician" are not exactly the same, the definition of "physician" set forth in the ordinance is broad enough to include the practice of chiropractic as that practice is defined in the Missouri statutes.

The legislative body of the City of St. Ann could have omitted the definition of the term "physician." They could have defined "physician" as a person licensed under Chapter 334, RSMo 1978 if they had wished to eliminate chiropractors. They chose not to do this but instead enacted an

ordinance containing a broad, almost unrestricted, definition which encompasses the practice of chiropractic.

Respondent refers in its argument to a dictionary definition of "physician" which is not applicable because the word was defined in the ordinance. The parties agree that there are no Missouri cases that clearly define the term "physician" but respondent cites cases from other jurisdictions which have defined the term "physician" so as not to include chiropractors.[1] In opposition to the cases cited by respondent, appellant cites other foreign cases which include chiropractors within the definition of "physician."[2] Respondent also cites an attorney general's opinion[3] and statutory references to "physician" in which the term is held not to include chiropractor; and indeed the term has been used primarily in reference to persons having medical doctor degrees. However, Regulation 4 CSR 70–2.060 promulgated by the State Board of Chiropractic Examiners and now in effect, permits a chiropractor, when describing himself as a doctor to the public, to use the term "Chiropractic Physician." And, it is interesting to note that in Chapter 330 of the Missouri Revised Statutes relating to podiatrists, § 330.010.2 includes the words "physician of the foot" in defining the practice of chiropody.

However, all of the references to "physicians" in the statutes and the definitions in other cases and attorney generals' opinions are not applicable to the case under review. The City of St. Ann's legislative body itself defined "physician" and under that definition a chiropractor is a physician. If the legislative body had not done so, perhaps the decision here would be different.

Respondent argued that the definition of the practice of chiropractic in § 331.010, RSMo 1978 limited chiropractors to the treating of ailments of the human spinal column. Not so. The adjustments of the spinal column are to be made for correction of the cause of abnormalities and deformities of the body, the cause, according to chiropractic theory, being in the spine, but the abnormalities or deformities being anywhere in the body. And even if chiropractic treatments were limited to ailments of the human spinal column those limited ailments still would be included in the "physical ailments of human beings" specified in the ordinance definition of "physician."

The judgment is reversed and remanded with instructions to dissolve the permanent injunction which was issued by the trial court and to enter a judgment in favor of appellant on respondent's cause of action.

STEWART, P. J., and CRIST, J., concur.

1. *Beverunger v. Briele*, 25 Md.App. 233, 333 A.2d 664, 668 (1975); *Osborne v. Talbot*, 197 Md. 105, 78 A.2d 205, 207 (1951); *New York Life Ins. Co. v. Modzelewski*, 267 Mich. 293, 255 N.W. 299, 300 (1934); *S. H. Kress & Co. v. Sharp*, 156 Miss. 693, 126 So. 650, 653 (1930); *Corsten v. State Industrial Commission*, 207 Wis. 147, 240 N.W. 834 (1932); *Isaacson v. Wisconsin Casualty Ass'n*, 187 Wis. 25, 203 N.W. 918 (1925).

2. *Collins v. Bair*, 256 Ind. 230, 268 N.E.2d 95 (1971); *Dean v. State ex rel. Board of Medical Registration & Examination*, 233 Ind. 25, 116 N.E.2d 503 (1954); *Thomas v. Carlton Hosiery Mills*, 14 N.J.Super. 44, 81 A.2d 365 (1951).

